IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MARGARITO ARGUELLO,
    Petitioner,

vs.                                                     Case No.:  5:15cv145/LAC/EMT

NICOLE C. ENGLISH, WARDEN,
    Respondent.
_____/

## REPORT AND RECOMMENDATION

This matter is before the court on a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 (ECF No. 1).  Respondent filed a response to the petition (ECF No. 10).  The court directed Petitioner to file a reply (ECF No. 11), but he has not done so.

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter.  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.    BACKGROUND

Petitioner is a prisoner of the Federal Bureau of Prisons ("BOP"), housed at the federal correctional institution in Marianna, Florida (*see* ECF No. 1 at 20).[1]  The habeas petition challenges a prison disciplinary decision which resulted in the disallowance of 27 days of good conduct time and placement in disciplinary segregation for 15 days, which was suspended pending 180 days of "clear conduct" (ECF No. 10, Ex. 2).

The following facts are undisputed by the parties (*see* ECF No. 1 at 3–6, 10–11; ECF No. 10 at 2–4).  On February 18, 2014, Petitioner was placed in the Special Housing Unit ("SHU") for allegedly fighting with another inmate. Petitioner received notice of the infraction in an Incident Report ("IR") delivered to him on March 13, 2014.  The IR, written by Lieutenant A. Starcher, alleged the following:

> Upon conclusion of this investigation dated March 12, 2014 at 11:25 a.m., it was determined a physical altercation occurred on February 18, 2014, in cell 122, between inmates Arguello, Margarito Reg. No.: 99135-004 and [ ].  Specifically, both inmates had injuries consistent with a fight and admitted to fighting.  Both inmates were placed in the special Housing Unit (SHU) until the investigation was closed.  There is nothing further to report.

(ECF No. 10, Ex. 3).

On March 31, 2014, the IR was rewritten to include more details.  The rewritten IR alleged the following:

> Upon conclusion of this investigation dated March 12, 2014 at 11:25 a.m., it was determined a physical altercation occurred on February 18,

---

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system.

Case No.:  5:15cv145/LAC/EMT

> 2014, in cell 122, between inmates Arguello, Margarito Reg. No.: 99135-004 and [ ]. Both inmates had injuries (redness) consistent with a fight and admitted to fighting. Specifically, inmate Arguello entered the cell of inmate [ ] and struck him in the face with his hand. Inmate [ ] then began swinging back with his hands to strike inmate Arguello. Both inmates were placed in the Special Housing Unit (SHU) pending the closure of the investigation. There is nothing further to report.

(ECF No. 10, Ex. 4). The rewritten IR was delivered to Petitioner on March 31, 2014. On April 4, 2014, the Warden approved an extension of the deadline for the Unit Disciplinary Committee ("UDC") to review the IR (ECF No. 10, Ex. 5). On April 9, 2014, the UDC reviewed the IR and referred it to the Discipline Hearing Officer ("DHO") for further hearing (*see* ECF No. 10, Ex. 4). On April 15, 2014, the DHO returned the IR to the UDC, stating that it must be rewritten (*see* ECF No. 10, Ex. 6).

The IR was rewritten the same date, April 15, 2014 (ECF No. 10, Ex. 7). The rewritten IR alleged the following:

> Upon conclusion of this investigation dated March 12, 2014 at 11:25 a.m., it was determined a physical altercation occurred on February 18, 2014, in cell 123, between inmates Arguello, Margarito Reg. No.: 99135-004 and [ ]. Specifically, both inmates had injuries consistent with a fight and admitted to fighting. Inmate Arguello stated inmate [ ] hit him in the chin with his fist and he (Arguello) hit him [ ] back to keep him at bay. In a later interview inmate [ ] admitted to striking back with his hands to "defend himself." Both inmates were medically assessed, photographed, and escorted to the special Housing Unit.

(ECF No. 10, Ex. 7). Petitioner received a copy of the rewritten IR on April 15, 2014 (*see id.*). On April 21, 2014, the UDC reviewed the IR and referred it to the DHO for further hearing (*see* ECF No. 10, Ex. 7). On May 5, 2014, the Warden approved the UDC's delay in reviewing the IR (ECF No. 10, Ex. 6).

On April 21, 2014, Petitioner received a notice of his rights, notifying him that he had the right to prior notice of the charge, the right to staff representation at the hearing, the right to call witnesses and present documentary evidence, the right to present a statement in his defense or remain silent, the right to be present at the hearing, the right to be advised of the hearing officer's written decision, and the right to appeal the decision (ECF No. 10, Ex. 9). Also on April 21, 2014, Petitioner received a Notice of Discipline Hearing Before the DHO (ECF No. 10, Ex. 8). Petitioner indicated on the Notice that he wished to have M. Renaud as a staff representative at the hearing (*id.*). He also indicated that he wished to call four witnesses at the hearing, Lieutenant Carter, Officer Chapman, Lieutenant Starcher, and Officer Whidden (*id.*). Petitioner indicated that each witness would testify to the following: (1) Lieutenant Carter: "my due process rights being violated"; (2) Officer Chapman: "my due process rights were violated"; (3) Lieutenant Starcher: "she can verify what dates she was here & who told her to re-write the SHO7"; (4) Officer Whidden: "Lt. refused to provide me a copy of my SHO7" (*id.*).

The disciplinary hearing was conducted by DHO H. Mitchell on May 8, 2014 (ECF No. 10, Ex. 2). Staff member M. Renaud appeared with Petitioner, as Petitioner requested (*see id.*). Petitioner denied the charge (*id.*). He stated he had to defend himself because the other inmate pushed him while the two of them were in Petitioner's cell (*id.*). Petitioner stated he hit the other inmate in the face three times with his fist (*id.*). Petitioner stated his rights were violated because he did not receive

the UDC review in a timely manner (*id.*).  Petitioner stated he wrote a note to Mr. Sherman stating he wanted to receive the IR, and that it was "dumb" (*id.*).  Petitioner stated that the fight was over a card game (*id.*).

Hearing Officer Mitchell noted that Petitioner had requested to present testimony from Lieutenant Carter, Lieutenant Starcher, Officer Chapman, and Officer Whidden, but that Petitioner waived presentation of those witnesses and indicated he was ready to proceed with the hearing (ECF No. 10, Ex. 2).  Hearing Officer Mitchell also considered the following documentary evidence:  (1) a memorandum provided by Lieutenant J. Lasenberry, (2) a memorandum provided by Lieutenant T. Malone, (3) a memorandum provided by Officer Noblin, (4) a memorandum provided by Officer Vinzant, (5) an inmate investigative report, (6) BOP Health Services Clinical Encounter forms, and (7) a note provided by Petitioner (*id.*).

Hearing Officer Mitchell found that Petitioner committed the act as charged (ECF No. 10, Ex. 2).  The specific evidence he relied upon to support his finding was the following:

> Your due process rights were reviewed with you by the DHO at the time of the hearing.  You stated you understood your rights, had no documentary evidence to present, and waived your witnesses.  Your staff representative was present to assist you at the hearing.  You indicated to the DHO you were ready to proceed with the hearing.
>
> The DHO relied upon as evidence, the memorandum provided by Lieutenant Lasenberry which states on February 18, 2014, the Apache A unit officer notified the operations lieutenant of a possible assault. Upon her arrival she went to cell 204 and Inmate [ ] was lying on his bed with a khaki shirt concealing his face.  She had him to [sic] remove the shirt and he had a laceration to his right eye.  After the unit had been

secured, Inmate [ ] was escorted to health services. Staff then reviewed the camera and you were seen leaving cell 204 and throwing a towel with blood on it in the trash. After you were in medical you said you and [ ] were always playing with each other. You said [ ] came in your cell and punched you and you told him to stop and he punched you on the chin even harder. You said you pushed [ ] and was telling him to stop. You said [ ] became angry and continued to punch you so you were punching him to keep him off you. Officer Noblin said he responded to the unit to assist in locking the unit down. After escorting inmates to the lieutenant's office, he assisted in reviewing the camera. He said it appeared an assault took place in cell 122. He observed an inmate with a tan complexion depart the cell wearing off white gym shorts and carrying a towel. He observed the inmate throw the towel in the trash can outside his cell. Officer Noblin returned to the unit and located a towel in the trash can outside cell 122. The towel was covered in blood and had your name on the label. Officer Vinzant said he observed Inmate [ ] in cell 204 holding a blood saturated towel over his right eye. He secured the cell and notified the lieutenant and ordered the inmates to lock down. He reviewed the camera which shows [ ] leaving cell 123 with a shirt over his head. He then went to his cell. He did not have any contact with any other inmates when he went back to his cell. He said since it appeared the incident occurred in cell 123, he conducted upper body searches of the inmates assigned to the cell and you had visible scratches on the left side of your face. Lt. Malone stated he reviewed the camera and observed Inmate [ ] enter cell 122 and later depart with a khaki shirt over his dead. He said he saw you depart the cell and take your shirt off and put a towel in the trash can directly in front of your cell. He and Mr. Vinzant went back to the unit and found you in your cell with injuries to your neck and jaw.

The DHO also relied upon as evidence, the inmate investigative report which states on February 18, 2014, the Apache Unit officer called for assistance. The institution video camera was reviewed and Inmate [ ] was seen entering your cell. He then departed the cell with a khaki shirt over his heard [sic]. Upper body checks were conducted and you had injuries consistent with being in a physical altercation. Inmate [ ] was interviewed and stated although you had a problem over a game, it was ok. You submitted a not [sic] admitting to fighting.

The DHO also relied upon as evidence, the clinical encounter forms on you and Inmate [ ]. You were seen by medical staff and had superficial scratches on your neck and some swelling to the left side of your jaw

Case No.:  5:15cv145/LAC/EMT

> (jaw pain).  Inmate [ ] was also seen by medical staff and had small lacerations above and below his right eye and some facial swelling.
>
> The DHO found you committed the prohibited act of fighting any person.
>
> The DHO bases this decision on the facts presented in the body of the written report. On March 12, 2014, upon conclusion of an investigation, it was determined you and Inmate [ ] were involved in a fight on February 18, 2014.  Both of you had injuries consistent with being in a fight and both of you admitted to fighting.  You said [ ] hit you in the chin with his fist and you hit him back to keep him at bay.  In a later interview, [ ] admitted to striking back with his hands to defend himself. You also admitted to the DHO the incident report was true and that you were fighting.  Additionally, the supporting documentation corroborates the written statement of Ms. Starcher.  Although you said you were defending yourself, the DHO believes you said this in hopes of getting the incident report expunged.  Additionally, you provided no evidence you were not fighting.  Furthermore, staff have nothing to gain by providing a false [sic].
>
> The DHO believes the written report, and the evidence presented at the hearing, provides some evidence to indicate you committed the prohibited act.
>
> Due to the incident report having to be rewritten, you did not receive a copy of the incident report within 24 hours from the time staff became aware of the incident.  Additionally, you did not receive your initial hearing within 5 working days.  Your unit team requested an extension, which was granted by the warden.

(ECF No. 10, Ex. 2).

Hearing Officer Mitchell imposed the following sanctions:  disallowance of 27 days of good conduct time, and placement in disciplinary segregation for 15 days (suspended pending 180 days of clear conduct) (*id.*).  He also explained the reasons for each sanction (*id.*).

## II.    ANALYSIS

Petitioner contends he was denied due process during the disciplinary process (*see* ECF No. 1 at 3). He contends the initial IR was not delivered to him within 24 hours of the incident (*id.* at 4). He also contends the initial investigation took too long (i.e., twenty-two days) (*id.*). Petitioner alleges his confession was the product of threats and duress (*id.* at 3–4). He also alleges he was coerced into waiving his right to present witnesses in his defense (*id.* at 5–6). Petitioner contends there was no evidence to support the disciplinary decision (*id.* at 5).

Respondent contends Petitioner was not denied due process under federal law (ECF No. 10 at 4–8). Respondent argues the record establishes Petitioner received the procedural due process protections to which he was constitutionally entitled under Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), despite the fact that there may have been deviations from BOP disciplinary policy and federal regulations with regard to when Petitioner was provided copies of certain documents and when the hearing was conducted (*id.* at 4–7). Furthermore, there was sufficient evidence to show that Petitioner committed the disciplinary infraction; therefore, substantive due process was satisfied under Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985) (*id.* at 7–8).

Prison disciplinary proceedings are not part of a criminal prosecution; therefore, the full panoply of due process rights to which a defendant in a criminal proceeding is entitled does not apply. Wolff, 418 U.S. at 563–67. Once prison disciplinary charges are filed, the Supreme Court has outlined that due process requires: (1)

written notice of the charges be given to the inmate at least twenty-four hours before his appearance before the hearing committee, (2) a written statement by the hearing committee citing the evidence relied on and the reasons for the disciplinary action be given to the inmate, and (3) the opportunity for the inmate to call witnesses and present documentary evidence in his defense, so long as institutional safety and correctional goals are not jeopardized. Id. There is no constitutional right to confront and cross-examine witnesses. Id. at 567–69.

Additionally, in order to satisfy due process, a decision of a prison disciplinary team must be supported by "some evidence" in the record. Hill, 472 U.S. at 455; Young v. Jones, 37 F.3d 1457 (11th Cir. 1994); Inglese v. Warden, U.S. Penitentiary, 687 F.2d 362, 363 (11th Cir. 1982). Furthermore, "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455 (emphasis added).

Petitioner failed to show he was denied the enumerated procedural protections required by Wolff. The first requirement of Wolff was that Petitioner receive notice of the charge and notice of the hearing at least 24 hours prior to the hearing. Petitioner appears to argue that this requirement was not satisfied, because officials violated BOP regulations with regard to the timing of the investigation and the

hearing. However, a claim that the BOP violated its own policies or procedures, when those policies and procedures were not mandated by statute or the constitution, does not constitute a violation of federal law; therefore, it cannot be sustained in a habeas petition. *See* Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir. 2011). Program Statements are BOP policies, guidelines or interpretative rules, not substantive law. *Id.* (citing Jacks v. Crabtree, 114 F.3d 983, 985 n.1 (9th Cir. 1997); Reno v. Koray, 515 U.S. 50, 61 (1995) (characterizing BOP program statements as simply interpretive rules)); BOP Program Statement 1221.66, Chps. 1.2, 2.1 (referring to BOP program statements as "policies and procedures," not rules); Miller v. Henman, 804 F.2d 421, 426 (7th Cir. 1986); *see also* United States v. Wilson, 413 F.3d 382, 389 (3d Cir. 2005) (Department of Justice guidelines and policies do not create enforceable rights for criminal defendants); United States v. Craveiro, 907 F.2d 260, 264 (1st Cir. 1990) ("[T]he internal guidelines of a federal agency, that are not mandated by statute or the constitution, do not confer substantive rights on any party.").

Further, although an agency's failure to follow its own policies or non-statutory regulations may constitute a deprivation of liberty without due process, an agency's failure to comply in every respect does not in every case require the grant of relief; instead, courts examine the specific facts to determine if the petitioner suffered substantial prejudice, that is, prejudice in the constitutional sense. *See* Mullen-Cofee v. I.N.S., 976 F.2d 1375, 1380 (11th Cir. 1992) (alien's challenge to deportation decision, on ground that immigration judge failed to comply with applicable

regulations, did not entitle him to relief where alien failed to demonstrate that alleged misconduct resulted in the "substantial prejudice" necessary to prevail in due process challenge to deportation proceeding); Gov't of the Canal Zone v. Brooks, 427 F.2d 346, 347–48 (5th Cir. 1970)[2]; Turner v. Henman, 829 F.2d 612, 614 (7th Cir. 1987) (habeas petitioner's challenge to United States Parole Commission's determination of petitioner's parole date, based solely on Commission's alleged failure to follow its regulations, did not entitle him to habeas relief where petitioner failed to show that the procedures used by the Commission were unconstitutional); Derrickson v. St. Louis Bd. of Educ., 703 F.2d 309, 315 (8th Cir. 1983) (finding that, as a matter of law, the defendants' alleged deviations from the regulations did not amount to a constitutional deprivation); *see also, e.g.*, Sharma v. Drug Enforcement Agency, No. 11-10963, 2013 WL 791396, at *4 (11th Cir. Mar. 4, 2013) (unpublished) (even where a governmental entity fails to follows its own regulations providing for procedural safeguards, it is not a denial of due process if the individual was provided with adequate notice such that his rights were not prejudiced); Mackey v. Fed. Bureau of Prisons, 440 F. App'x 373 (5th Cir. 2011) (denying habeas relief where petitioner challenged disciplinary decision of BOP but failed to establish that any of the alleged violations of federal regulations and/or BOP policy statements resulted in the required prejudice); Terry v. Fondren, No. 08-1059 (PJS/SRN), 2008 WL 5071077, at *5–6 (D. Minn. Nov. 24,

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit Court of Appeals issued before the close of business on September 30, 1981.

Case No.: 5:15cv145/LAC/EMT

2008) (BOP's failure to comply with regulations regarding provision of incident report to inmate within 24 hours did not warrant habeas relief where inmate received adequate notice of charges against him and other due process requirements set forth in Wolff).

Here, Petitioner failed to show that the BOP staff's failure to comply with time deadlines set forth in BOP policies and procedures entitle him to relief.  With regard to Petitioner's allegedly untimely receipt of the incident report, BOP regulations and policies provides that an inmate "will ordinarily" receive the incident report within 24 hours of staff becoming aware of his involvement in the incident.  *See* 28 C.F.R. § 541.5(a); Program Statement 5270.09, Chp. 2.  BOP regulations and policies also provide that the UDC will "ordinarily" review the IR within five working days after it is issued (not counting the day the IR was issued).  *See* 28 C.F.R. § 541.7(c); Program Statement 5270.09, Chp. 4.  Here, Petitioner received the initial IR three weeks after staff became aware of his involvement in the fight, and he did not receive UDC review until nearly three weeks after the issuance of the initial IR.  However, Petitioner received notice of the charge and notice of the DHO hearing at least 24 hours prior to the DHO hearing, which is all that is required to satisfy due process concerns.  Furthermore, Petitioner has not shown that the presentation of his defense at the DHO hearing was impeded or otherwise prejudiced by the delay in receiving the charge or the delay in the initial UDC  hearing.  Therefore, Petitioner failed to

demonstrate a procedural due process violation with regard to the delays in the investigation and initial review by the UDC.

The second <u>Wolff</u> requirement was satisfied, because Petitioner received a written statement by the hearing officer citing the evidence relied on and the reasons for the disciplinary action.

With regard to the third <u>Wolff</u> requirement, i.e., the opportunity to call witnesses in his defense, although Petitioner alleges he was "threatened" and "coerced" into waiving his right to present witnesses, his specific allegations do not rise to the level of coercion. Petitioner alleges that prior to commencement of the disciplinary hearing, Hearing Officer Mitchell "threatened" that if Petitioner did not waive his right to present witnesses, Petitioner would have to wait in the SHU for another disciplinary hearing, because not all of his witnesses were present (ECF No. 1, Affidavit of Margarito Arguello ¶ 6). Petitioner states he had already waited 78 days in the SHU, and did not want to be isolated in the SHU any longer, so he "bent to the overtures" of Hearing Officer Mitchell (*id.*). Hearing Officer Mitchell's giving Petitioner the choice of continuing the hearing until his witnesses were present, or proceeding with the hearing without his witnesses, does not suggest coercive conduct on the part of Mitchell. Furthermore, Petitioner does not allege that any of the four officers he listed as witnesses actually witnessed any of the events underlying the disciplinary charge for fighting; rather, Petitioner alleges that each of them witnessed the alleged due process violations that occurred during the investigatory process,

primarily the delays in investigating the charge and bringing the matter to a hearing (for example, when and by whom Petitioner was served with the initial and rewritten IRs, who authorized the rewriting of the IR and the reasons for the rewriting, and when Petitioner received a copy of the IR). Therefore, Petitioner failed to show a due process violation with regard to his right to present witnesses in defense of the fighting charge.

Additionally, the evidence was sufficient to support the hearing officer's decision. Petitioner alleges his admission that he fought with another inmate was the product of duress. He describes the circumstances of the "duress" as follows:

> On February 18, 2014, while being taken to the Special Housing Unit ("SHU") for an alleged code: 201 (fight) violation by Lieutenants J. Lasenberry and T. Malone I was threatened with the charge of assault if the investigation and proceedings weren't brought to a hasty resolution, and was threatened with delayed investigations and proceedings if the proceedings weren't hastily resolved. Consequently I believed I had no other option but to comply with my inferred guilt by my custodians, absent that duress I would not have stated I was in fact guilty of the Code: 201 violation.

(*see* ECF No. 1, Aguello Aff. ¶ 1).

As previously discussed, the hearing officer based his decision on (1) the reports and memoranda of officers and medical staff that Petitioner and the other inmate had physical injuries consistent with being in a fight, (2) the camera footage, (3) photographs, and (4) Petitioner's admission <u>to Hearing Officer Mitchell</u> that the IR was true and that he was fighting. Thus, even discounting consideration of Petitioner's "duressed" admission to Lieutenants Lasenberry and Malone on February 18, 2014, there was sufficient evidence under <u>Hill</u> to support Hearing Officer

Mitchell's disciplinary decision.  *See* <u>Hill</u>, 472 U.S. at 456 (prison guard's testimony and copies of his written report supported conclusion that the evidence before the disciplinary board was sufficient to meet the requirements imposed by the Due Process Clause).  Given the fact that there was "some evidence" upon which the hearing officer could rely, as well as the disciplinary (as distinguished from criminal) nature of the proceedings and sanctions, the undersigned concludes there was sufficient evidence upon which to base a finding of Petitioner's guilt of the fighting charge to satisfy due process.

III.   CONCLUSION

Petitioner failed to demonstrate he was denied due process during the disciplinary process that resulted in his conviction of Incident Report #2565388.  Therefore, he is not entitled to federal habeas relief.

Accordingly, it is respectfully **RECOMMENDED**:

1.   That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.   That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida, this <u>18</u>th day of March 2016.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE  JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**

Case No.:  5:15cv145/LAC/EMT